# ORIGINAL

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

Paul S. Dopp
      **Plaintiff**
v.
Mooney Aerospace Group, Ltd. &
Mooney Airplane Company, Inc.,
& LH Financial Services Corp.
      **Defendants**

**CIVIL RICO ACTION NO**

08 - 961

### COMPLAINT

TO THE HONORABLE DISTRICT COURT:

Plaintiff Dopp, acting Pro Se, files this Federal Civil RICO Complaint under 18 U. S. C. 1961 et seq. alleging Mooney Aerospace Group, Ltd ("MASG") is a RICO Enterprise as Dopp claims significant damages due Layte B. Dopp & himself resulting from the criminal activities of MASG's RICO Enterprise. Dopp has also assumed all valid claims & expenses between AVAQ Group, Inc., Mooney Aircraft Corporation and MASG's RICO Enterprise. A RICO Pleading Statement will be filed & it's expected that Delaware counsel will be retained & an Amended Complaint filed naming additional defendants.

### Jurisdiction of the Court

1. Jurisdiction in this action arises under the Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. Section 1961 et seq, 18 U.S.C Sec 1964(c) This Court also has jurisdiction over all pleadings and claims set forth herein under 28 U.S.C.1331. Venue rests with this Court under 18 U.S.C.1965(a) and diversity jurisdiction arising under 28 U.S.C. 1332.

### The Parties

2. Paul S. Dopp is a resident of Florida and a Creditor-Shareholder AVAQ Group, Inc.("AVAQ") & a Creditor of Mooney Aircraft Corporation ("MACORP")

2008 DEC 22 PM 12: 43
CLERK, U.S. DISTRICT COURT
DISTRICT OF DELAWARE
FILED

3. Mooney Aerospace Group, Ltd ("MASG") is Delaware Corporation that In 2006 merged with MAG Holding Corp (also a Delaware Corporation) and has Corporation Service Company of Wilmington, Delaware as its registered agent.

4. Mooney Airplane Company, Inc.("MAC") is a Delaware Corporation with The Corporation Trust Company of Wilmington, Delaware as its registered agent.

5. LH Financial Services Corp.("LHFS") is a New York State Corporation with its principal place of business at 150 Central Park South, NY 10019 & a named Defendant because it & its affiliated BAWAG Bank of Austria & Alpha Capital are indispensable parties pursuant to Rule 19 of Federal Rules of Civil Procedure. LHFS is also known to be affiliated with the Watermill Group LLC which has the Corporation Service Company of Wilmington, DE as its registered agent.

### Introduction

6. In early 1998, Dopp organized AVAQ Group, Inc. for the sole purpose of acquiring 100% ownership of MACORP, a New Jersey Corporation then owned by French interests and unprofitably manufacturing single engine aircraft at its Kerrville, TX facility. AVAQ quickly completed its 100% acquisition of MACORP. Among those Joining Dopp & his family members as shareholders & creditors of AVAQ were: Bob Lutz then CEO of Chrysler & now GM's Vice Chairman; Robert Hood, retired President of Douglas Aircraft as Dopp & AVAQ's investors all had extensive aviation experience. By December, 2001, MACORP completed its first ever year of profitability as MACORP substantially reduced secured loans owing Congress Financial Corporation ("CFC"). By mid-2001, without the knowledge or consent of MACORP or AVAQ, CFC's Pres/CEO Wm. Davis, retained a longtime

-2-

Associate of his, Barry Kasoff, to have final say on MACORP's activities. Kasoff then not only engaged in fraudulent activities at MACORP's expense & losing MACORP a 12 airplane order & taking flying lessons in MACORP planes at its expense (Kasoff was later dismissed for cause by the Bankruptcy Court Judge). AVAQ offered CFC an individual's $65million guarantee on the $8+million of MACORP debt then secured by CFC's $24,463,300 appraised asset values but, CFC mandated Dopp to place MACORP into Chapter 11 Bankruptcy proceeding which he did over the objections of many at MACORP on July 27, 2001. By mid November, 2001, MACORP submitted a Reorganization Plan to the Bankruptcy Court that provided for all of its Creditors to be paid in full as it also brought forth many offers of participation in that Plan from well funded & qualified experienced investors seeking a role with AVAQ as MACORP would exit Chapter 11. MASG (t/k/a AASI) initially visited MACORP's Texas facilities where Dopp was advised by Apollo 13 Astronaut Jim Lovell that he had resigned as a member of AASI's Board of Directors because of his concerns about the SEC registered AASI's new foreign investors (Lovell gave Dopp no specifics). Following a 12-23-01 Miami meeting requested by AASI where Dopp met with several AASI & LHSC representatives including Jos. Sarachek who advised Dopp that he very special relations with CFC , a binding agreement was executed by mail under a date of 12-28-01 between AASI & AVAQ/MACORP (Exhibit #1 attached hereto). In that agreement, among other things, AASI represented that it had available to it adequate funding to properly capitalize MACORP and fund MACORP's Amended Plan of Reorganization as the Parties also agreed that "For a period of two years

no party hereto shall, directly or indirectly,…..in any way utilize or seek to utilize the Evaluation Data (furnished by AVAQ to AASI) in connection with any transaction except the Transaction pursuant to this Agreement". This became the MASG RICO Enterprise's initial use of Mail Fraud. Only later did Dopp learn that AASI did not have "available adequate funding" and that AASI then proceeded to utilize AVAQ's Evaluation Data on its 3-12-02 transaction without first obtaining AVAQ's or MACORP"s written consent as AASI employed numerous fraudulent criminal acts in the Bankruptcy Court proceedings, resulting in grievous losses to Dopp, AVAQ, MACORP & others, including AASI's independent shareholders & Creditors, all well In excess of $30 to 40million. It was not until MASG published its Press Release dated 12-23-04 regarding the Delaware Bankruptcy Court's Confirmation Order that it was finally beyond any question that MASG & all those persons affiliated with it had violated 18 U.S.C. 1961 et seq & that MASG was properly identified & had acted as a RICO Enterprise under 18 U.S.C. 1961.

### Predicate Acts

7a.  In order to save the Court's time, we shall only describe a limited number of critical & motivated Predicate Acts carried out by the MASG RICO Enterprise. Detailed information on each of the numerous motivated illegal MASG RICO Enterprise's Predicate Acts is available & will be provided as required or asked..

 7b.   J. Nelson Happy, AASI & LHFS's attorney, (motivated to be MASG's VP-Counsel & later in 2002 its Pres/CEO) violates the wire fraud provisions of 18 U.S.C.(1343) when he represents in a 12-26-01 email to Dopp that "we are the ones who actually funded AASI in the amount of $25 million which is public

-4-

information which you can check on EDGAR. Our primary source of capital is Bawag Bank." .Dopp subsequently can't find any SEC filings to verify Happy's claims as Dopp later learns that BAWAG does have a majority interest in some of MASG's Investors and fails disclose that fact in any AASI or BAWAG SEC filings.

7c. Under date of 12-28-01 Dopp receives AASI's executed copy of the letter Agreement mentioned in para. #6 above & attached as Exhibit #1 hereto. That Binding Agreement, it's later learned, contains a false representation by AASI that it has financing available to it to carryout the agreed-upon Plan as AASI subsequently further breaches that Agreement by failing to obtain AVAQ's or MACORP's written consent to enter into an agreement different than the one contained in MACORP's November Reorganization Plan which called for 100% repayment of all creditors. This breach caused serious damage to the Dopp interests as AASI also violates the mail fraud provisions of 18 U.S.C.(1341)

7d. Criminally violating several Federal statutes in February of 2002, Roy Norris, then AASI's CEO falsely represents to the Bankruptcy Court that: "we've received financing commitments to carryout the acquisition of Mooney's assets" as AASI fraudulently conceals, until after the Court approves AASI's acquisition of MACORP's assets (valued at $30,863,300) the fact that AASI's auditor, Ernst & Young, stated in its 12-31-01 Audit that: "AASI's working capital is insufficient to meet its needs beyond the 2d quarter of Fiscal 2002".

7e. On May 24, 2004 a California Court enters a $24,152,000 judgment against ASSI in favor of AASI's Long Beach, CA landlord. This following AASI's deliberate failure to report its Long Beach 2000 lease default while reporting

in its financial statements that it had only $10,022,000 in long-term obligations. Days prior to filing a Chapter 11 Bankruptcy proceeding in Delaware, MASG sells 100% of MAC (holder of all of the assets fraudulently acquired from MACORP) to Allen Holding & Finance Ltd ("AH&F") for what proved to be "zero" consideration. MASG never informed the Court of this last minute illegal act intended to defraud MASG's creditors (including the Dopp interests) & its public shareholders while causing further severe losses to those MASG-unaffiliated & unprotected parties.

7f. It's only some days after MASG's Press Release dated 12-23-04 that Dopp learns that the largest shareholder of MASG is now AH&F & other MASG RICO Enterprise members following MASG's corrupt & illegal actions involving MAC & persons acting with & for MASG's RICO Enterprise. MASG agreed in its May, '04 Agreement with MAC, that MAC would be assuming over $21million of MASG's debt. In late December, 2004 Dopp learns that MASG has reassumed the $21+million debt <u>as only then it is irrefutable that MASG is a RICO Enterprise.</u>

7g. Continuing its RICO activities, MASG announces on October 30, 2006 that MAG, the holder, with other MASG RICO investors, of more than 90% of MASG's outstanding stock (Dopp reminds a reader that this is the result of prior criminal violations by members of MASG's RICO Enterprise), is merging with MASG & will shortly announce MASG's privatization which followed within a few days. Does anyone know of a better way to avoid SEC or DOJ-FBI investigations?

### Claims

8a. Paul & Layte Dopp's **$499,314 claim** is only for unpaid loans to MACORP & excludes their multi-million dollar AVAQ & MACORP equity investments.

8b. MACORP's claim for its assets fraudulently acquired by AASI (not including claims for MASG debt due & unpaid to MACORP) are in excess of **$30,000,000**

### Treble Damages

This Court has jurisdiction under 18 U. S. C. Section 1964(c) to impose treble damages against the Defendants and for the Plaintiff.

### Offer to engage in immediate settlement talks

Plaintiff Dopp, in recent weeks, once again has offered through Steven E. Karol, MASG's and MAC's Chairman to immediately engage in settlement talks with a view to negotiate a modest & fair settlement of these issues in order to avoid the cost & expense of litigation. Mr. Karol denies Dopp's offer of settlement, replying that he would turn all further communications over to his lawyers. Mr. Karol, who apparently has approved of all of the MASG RICO Enterprise's actions since he first joined MASG & MAC is also closely associated with Defendant LHFSC and not surprisingly has had his Watermill Group's Boston law firm, Mintz, Levin et al represent MASG in several recent matters before the SEC.

**Dopp's offer to immediately engage in settlement talks with representatives authorized by the Defendants remains outstanding for a limited period.**

**PRAYER:**
WHEREFORE, PREMISES CONSIDERED, Plaintiff Dopp respectfully requests the Court to require the defendants to answer to the claims and facts submitted herein, and upon a final hearing or trial, that the Court:

1) Declare the Defendants responsible for the damages caused Paul & Layte Dopp and those whose claims Dopp has assumed all as alleged herein and that they be required, as the Court may direct, to promptly cause payment be made,

-7-

Including reimbursement & payment for Dopp's costs & expenses, and,

   2) Declare and award such further relief to which Plaintiff Dopp may show himself & Layte Dopp to be justly entitled to or to which the Court deems proper.

Respectfully submitted this 20th Day of December, 2008,

                    Paul S. Dopp
                    8842 SW 204 Lane
                    Cutler Bay, FL 33189
                    Cellno: (305) 793 2116\
                    Fax & telno: (305) 251 6848
                    Email: psdavaq@bellsouth.net

By: _____
     Paul S. Dopp, Pro Se

Encl. .Exhibit #1. AASI & AVAQ-MACORP 12-28-01 Agreement

**Certificate of Service will be to the following:**

Mooney Aerospace Group, Ltd.
c/o Corporation Service Company
2711 Centerville Road   Suite 400
Wilmington, DE 19808

Mooney Airplane Company, Inc
c/o Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

LH Financial Services Corp.
150 Central Park South   2nd Floor
New York, NY 10019-1566
&
c/o Watermill Group, LLC
c/o Corporation Service Company
2711 Centerville Road   Suite 400
Wilmington, DE 19808

AVAQ Group, Inc.
c/o Mooney Aircraft Corporation
Louis Schreiner Field
Kerrville, Texas 78028

December 28, 2001

Advanced Aerodynamics & Structures, Inc. ("AASI")
& Mooney Acquisition Company ("MAC2")
3205 Lakewood Boulevard
Long Beach, California 90808
Attention: J. Nelson Happy, Esq.

Re: Mooney Aircraft Corporation ("MAC"), Debtor-in-Possession's
    Plan of Reorganization filed under date of November 26, 2001

Gentlemen:

Thank you for arranging our 4pm Sunday, December 23rd MIA meeting and sending us under date of December 26th, 2001, your proposed Confidentiality Agreement concerning the above-referenced Plan of Reorganization (& Preliminary Disclosure Statement) that was submitted & filed within the 120 day exclusive period. AASI's interest & that of the others you've revealed to us that are associated & assisting AASI in this matter, is sincerely appreciated as a means of enhancing our Plan, benefiting MAC's Stakeholders and providing a sound basis for a unique & profitable future for all involved.

You have represented to us that you have arranged for, and have available, adequate financing to properly capitalize MAC and to fund our Amended Plan of Reorganization which should be satisfactory to MAC's Creditors and the Bankruptcy Court. This financing, of course, is subject to & conditioned upon, our promptly formulating a Business Plan which demonstrates financial feasibility acceptable to all parties, including ASSI, MAC, AVAQ and their shareholders & capital sources (the "Transaction"). We understand that Roy Norris will lead a MAC2/ASSI team that is now planning to meet in Kerrville, on or about January 1st/ 2nd, with myself, Chris Dopp & other MAC managers in order to formulate this Plan which must be approved by all Parties hereto (the "Parties" defined for the purpose of this Agreement as: AASI; MAC2; MAC & AVAQ)

You have informed us that you intend to form a new Delaware Corporation entitled Mooney Acquisition Company ("MAC2") which is to be funded totally or in part by AASI, including certain of its Shareholders & capital sources. We also understand that MAC2/AASI may wish to include affiliates & other investors, as may we, but it is with the understanding that such other investors may only be included with the prior consent of the other Parties, which consent may not be unreasonably withheld. MAC2/AASI acknowledges that we have been in communication with Pacific Dragon PTY ("PD") of Sydney, Australia and may wish to propose the inclusion of PD in this Transaction on a

EXHIBIT #1

basis satisfactory to all Parties. Without the consent of the other Parties, no Party to this Agreement will include any other party to an amended or revised Debtor's Plan of Reorganization.

It is understood & agreed that the Parties to this Agreement will pursue exclusively & jointly with each other, a Transaction involving the formulation & submission by no later than January 7, 2002 of an amended Debtor's Plan of Reorganization.

In connection with the proposed Transaction, the Parties hereto agree to make available to each other all information & data relating to MAC & AASI (a Public Company) and currently known by the Parties. As a condition to such information & data being furnished, each Party to this Agreement & its Directors, Officers, employees, Agents, Advisors (including without limitation: Attorneys; Accountants; Consultants; Bankers & Financial Advisors) agree to treat any such information & data furnished hereunder (hereafter referred to as "Evaluation Data") in accordance with the provisions of this Agreement. Included in the Evaluation Data may be information about ASSI & MAC which is proprietary or may contain information not available to the public. The Parties agree that this information will not be used as a basis for trading in the securities of ASSI without ASSI's prior written consent nor will MAC's proprietary information be used for any other purpose except the formulation of this joint plan & Transaction.

The term Evaluation Data does not include information which: a] is or becomes generally available to the Public other than as a result of a disclosure by any of the Parties hereto or its Representatives; b] was within the possession of any Party hereto prior to its being furnished pursuant hereto, provided that the source of such information was not known to be bound by a confidentiality agreement with or any other contractual, legal, or fiduciary obligation of confidentiality or another party with respect to such information, or; c] becomes available on a non-confidential basis from a source other than a Party hereto or any of its Representatives, provided that such source is not bound by a confidentiality agreement with or any other contractual, legal or fiduciary obligation of confidentiality to another party with respect to such information.

The Parties hereto agree that each of them and their Representatives shall use the Evaluation Data solely for the purpose of evaluating this Transaction, that the Evaluation Data will be kept confidential and that each of them and their Representatives will not disclose any of the Evaluation Data in any manner whatsoever; provided however, that a] each Party may make disclosure of such information with the prior written consent of the other Parties, or as required by law and; b] any of such information may be disclosed to those Representatives who need to know such information for the sole purpose of evaluating the Transaction and who agree to keep such information confidential.

Unless otherwise specified & agreed to in writing by the Parties hereto, each Party agrees to bear its own costs & expenses of evaluating & pursuing this Transaction. It is further agreed that no contract or agreement providing for the proposed Transaction shall be

-2-

deemed to exist or be enforceable, until & unless a final & definitive Joint Venture Agreement has been prepared, executed & delivered. The terms and conditions set forth in this Agreement, in the absence of such a Joint Venture Agreement, shall control the actions, rights & obligations of the Parties hereto.

Each Party hereto acknowledges that: a] the Evaluation Data constitutes a unique and valuable asset of the other Party; b] maintenance of the proprietary nature of such data to the fullest extent feasible is important to each party; c] the Evaluation Data is sufficiently secret to derive economic value from not being generally known to others who could obtain economic value from its disclosure or use, and; d] the Evaluation Data is currently the subject of efforts to maintain its secrecy or confidentiality. Therefore, in order to protect the Evaluation Data, each Party agrees as follows:

1) For a period of two years from the date hereof, no Party hereto shall, directly or indirectly, through any Representative or otherwise, without the prior written consent of the other Parties hereto, in any way utilize or seek to utilize, the Evaluation Data in connection with any transaction except the Transaction pursuant to this Agreement.

2) Each Party hereto agrees that if any other Party, or its Representatives, violates any of the confidentiality provisions concerning the Evaluation Data described hereinabove, that the non-breaching Party shall be entitled to an accounting & such damages as may be determined by any Court in accordance with the applicable & permissible laws governing such breaches.

This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware. Please confirm your agreement with the foregoing by signing & returning an executed copy to the undersigned whereupon this letter shall become a binding Agreement between AVAQ, MAC, ASSI & MAC2. Thank you.

Very sincerely,

Mooney Aircraft Corporation
& AVAQ Group, Inc.

By: _____
Paul S. Dopp, Chairman CEO

Agreed & accepted:
Advanced Aerodynamics & Structures, Inc.
&
Mooney Acquisition Company

By: _____
J. Nelson Happy, Esq.

-3-

